IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARL HELFAND,       *

    Plaintiff      *

    v.      *      CIVIL NO. JKB-15-3438

W.P.I.P., INC., *et al.*,      *

    Defendants      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Carl Helfand ("Plaintiff") brought this action against W.P.I.P., Inc. ("WPIP") and Mark J. Einstein[1] (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA") of 1938, as amended, 29 U.S.C. §§ 201 *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*; and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.* Now pending before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 3.)[2] The issues have been briefed (ECF Nos. 3–1, 6 & 7),

---

[1] Plaintiff alleges that Defendant Einstein is a "co-owner of WPIP, and at all times relevant was Plaintiff's employer." (ECF No. 1 ¶ 4.) In their memorandum accompanying their Motion to Dismiss, Defendants counter that one Manus E. Suddreth—a nonparty—is "sole owner and stockholder of WPIP," and that Einstein is "not an employee or owner of WPIP." (ECF No. 3–1 at 2.) However, Defendants proffer no evidence—in affidavit form or otherwise—to demonstrate that Einstein is not employed by WPIP. The Court thus declines to dismiss Einstein from the litigation at this stage, though Defendants remain free to argue for his dismissal in a future, procedurally proper motion.

[2] Defendants also request dismissal pursuant to Rule 12(b)(1), but that rule is of no help to them. Rule 12(b)(1) authorizes dismissal for lack of subject-matter jurisdiction. As will be discussed below, however, Defendants' sole argument in support of their Motion is that Plaintiff cannot satisfy the interstate-commerce element of the FLSA. It is well-settled that "FLSA coverage is *not* a jurisdictional issue." *Ramirez v. Amazing Home Contractors, Inc.*, 114 F. Supp. 3d 306, 309 n.2 (D. Md. 2015); *see also Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 33 (1st Cir. 2007) ("The FLSA places the [$500,000 annual gross-revenue threshold] in the definitions section of the Act, and does not suggest that the [threshold] is jurisdictional."); *Reyes v. Ramos*, Civ. No. GLR-15-1625, 2016 WL 197390, at *2 (D. Md. Jan. 15, 2016) ("Because Congress did not rank the 'engaged in commerce' requirement in the FLSA as jurisdictional, the Court will view the issues of whether the parties . . . were engaged in commerce as an element of

and no hearing is required, *see* Local Rule 105.6 (D. Md. 2014).  For the reasons explained below, Defendants' Motion will be DENIED.

## I. Background[3]

Plaintiff worked from January 2, 2014, through August 20, 2015, as an office clerk and security guard for WPIP, a Maryland business that provides parking, storage, and lot-rental services for independent tractor-trailer drivers and corporate fleet drivers. (ECF No. 1 ¶ 9.)  In his clerical capacity, Plaintiff performed administrative tasks including bill collecting and customer service; he was also responsible for light groundskeeping and maintenance. (*Id.* ¶ 20.)  As a security guard, Plaintiff was responsible for inspecting WPIP's facilities and monitoring the stored belongings left by WPIP's clients. (*Id.* ¶ 21.)

According to Plaintiff, at the outset of his employment Defendants informed him that "he would not receive overtime pay, even though he [would] work well over forty (40) hours each week." (*Id.* ¶ 28.)  True to their word, from January through November 2014, Defendants allegedly paid Plaintiff for forty hours of work each week even though he consistently worked as many as fifty or sixty hours. (*Id.* ¶¶ 29, 32.)  Beginning in November 2014, Defendants scheduled Plaintiff for fifty-two hours of work each week, paying him "straight time" (*i.e.*, no overtime compensation) for those fifty-two hours; Plaintiff continued to work additional hours without any compensation whatsoever. (*Id.* ¶¶ 33-34.)  This pattern of undercompensation continued until Plaintiff's employment ended in August 2015.

Plaintiff filed suit on November 11, 2015, charging Defendants with violations of the FLSA, the MWHL, and the MWPCL. (ECF No. 1.)  On December 14, 2015, Defendants filed

---

Plaintiffs' FLSA claims."). Accordingly, Rule 12(b)(6)—not Rule 12(b)(1)—provides the appropriate lens through which the Court may evaluate Plaintiff's Complaint.

[3] The facts are recited here as alleged by Plaintiff, this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

the pending Motion to Dismiss pursuant to Rule 12(b)(6),[4] contending that (1) the Court should dismiss Plaintiff's FLSA count with prejudice and (2) the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law counts. (ECF No. 3.) Plaintiff filed a response in opposition (ECF No. 6), and Defendants replied (ECF No. 7). Defendants' Motion to Dismiss is now ripe for decision.

## II. *Standard of Review*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In analyzing a Rule 12(b)(6) motion, the Court views all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ." *Twombly*, 550 U.S. at 556. Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it

---

[4] Defendants move in the alternative for summary judgment; in support of their alternative motion, they proffer several documents, including an affidavit by Manus Suddreth. "A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure," *Sager v. Hous. Comm'n*, 855 F. Supp. 2d 524, 542 (D. Md. 2012), which provides that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to *and not excluded by* the court, the motion must be treated as one for summary judgment under Rule 56," Fed. R. Civ. P. 12(d) (emphasis added). "Nevertheless, a district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings . . . or to reject it or simply not consider it.'" *Sager*, 855 F. Supp. 2d at 542 (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. 2004)). Where, as here, the Court has not yet entered a scheduling order and Plaintiff has had no opportunity whatsoever to undertake any discovery, the Court is loath to force Plaintiff into a summary-judgment posture. *Cf. Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) ("Generally speaking, 'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)); *Minter v. Wells Fargo Bank, N.A.*, 593 F. Supp. 2d 788, 792 (D. Md. 2009) ("As a general rule, summary judgment is not appropriate prior to the completion of discovery."). Accordingly, the Court will decline to exercise its discretion under Rule 12(d) and will instead evaluate Defendants' Motion pursuant to Rule 12(b)(6), excising the affidavits (on both sides) from its consideration.

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

## III. Analysis

Plaintiff alleges that Defendants undercompensated him in violation of the FLSA and the MWHL; because of these violations, Plaintiff further avers that Defendants are liable for damages under the MWPCL.

The FLSA requires covered employers to pay their employees a minimum wage, currently fixed at $7.25 per hour. 29 U.S.C. § 206(a). Covered employers must also pay their employees an overtime rate of one and one-half times the regular rate of pay for each hour worked in excess of forty per week. § 207(a). The MWHL requires Maryland employers to pay a minimum wage equal to the greater of the prevailing federal rate or the state rate;[5] the MWHL includes an overtime provision similar to the FLSA's overtime requirement. Md. Code Ann., Lab. & Empl. §§ 3-413, -415, -420. The MWPCL in turn requires Maryland employers to pay their employees' wages "at least once in every 2 weeks or twice in each month." § 3-502(a)(1)(ii). The statute adds that, upon cessation of employment, the employer "shall pay [the] employee . . . all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." § 3-505(a).

In their pending Motion, Defendants do not challenge Plaintiff's state-law theories. They do, however, challenge his FLSA theory, arguing that he cannot satisfy the interstate-commerce requirements of a FLSA claim. (ECF No. 3–1 at 4.) To recover for minimum-wage or overtime violations under the FLSA, a plaintiff-employee must demonstrate that either (1) his employer is

---

[5] Maryland's state minimum wage is presently set at $8.25 per hour. *See* Md. Code Ann., Lab. & Empl. § 3-413(c)(2).

an "enterprise engaged in commerce or in the production of goods for commerce" or (2) the plaintiff himself has "engaged in commerce or in the production of goods for commerce" in his capacity as an employee.  29 U.S.C. §§ 206(a), 207(a)(1).  The statute broadly defines "commerce" to include "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  § 203(b).

As between the two avenues of FLSA coverage, enterprise coverage is particularly expansive:  the statute defines such coverage to reach an employer with employees "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."  § 203(s)(1)(A)(i).  To curb what might otherwise constitute virtually limitless coverage, Congress included a revenue threshold:  enterprise coverage will only attach to an organization whose "annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." § 203(s)(1)(A)(ii); *see also* 29 C.F.R. § 779.259(a) ("The annual gross volume of sales made or business done of an enterprise consists of its gross receipts from all types of sales made and business done during a 12–month period.").  It is this gross-revenue requirement that Defendants raise as the primary basis for their Motion:  they contend that WPIP generated less than $500,000 in revenues during 2014 and 2015.  (ECF No. 3–1 at 6.)  To support their contention, Defendants appended certain financial statements to their Motion, at least some of which statements were apparently filed in an unrelated bankruptcy proceeding before the United States Bankruptcy Court for the District of Maryland (No. 13-12517).[6]

---

[6] As noted above, the Court declines to exercise its discretion under Rule 12(d) to convert Defendants' Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment.  Consequently, most evidence beyond the four corners of Plaintiff's Complaint is irrelevant to the Court's analysis at this stage.  Even so, because Defendants' 2014 financial statements were apparently filed with the United States Bankruptcy Court, they are matters of public record, and the Court may consider them in ruling on Defendants' Motion.  *See Sposato v. First Mariner Bank*, Civ. No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013) ("[A] federal court may take judicial notice of documents from prior state court proceedings and other matters of public record in conjunction with a Rule 12(b)(6)

The 2014 financial statements do appear to show that WPIP generated only $439,919.60 in "total income" during that calendar year. (ECF Nos. 3–3 to 3–14.)[7] Conversely, the 2015 financial statements, which are truncated and unsigned, are also incomplete: Defendants seem to have inadvertently switched the April 2015 statement with an April 2014 statement, and the final statement provides summary coverage from July 1 through December 10, leaving the Court to guess at revenues for the final twenty-one days of the year. Given that, at the pleading stage, the Court is duty-bound to construe all "facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff," *Ibarra*, 120 F.3d at 474, it would hardly be appropriate for the Court to *assume* that the 2015 statements, if complete, would show revenues totaling less than $500,000. Moreover, these documents appear to have been prepared by agents of WPIP: there is no indication that a third-party auditor or court-appointed supervisor drafted the statements, and in fact the 2014 statements are signed by Manus Suddreth, purported owner of the company. The Court will not deny Plaintiff—who alleges that Defendants cheated him out of his lawful wages over a period of many months—the opportunity to undertake discovery on his FLSA theory simply because *Defendants* say their company generated less than $500,000 in recent years. Rather, because Plaintiff alleges that WPIP's "annual dollar volume of business" exceeds $500,000 (ECF No. 1 ¶ 6), and because—at this stage—the Court accepts Plaintiff's well-pleaded allegations as true, *Iqbal*, 556 U.S. at 678, the Court will allow Plaintiff's FLSA claim to proceed.

---

motion to dismiss without converting it into a motion for summary judgment."). *But see Groff v. JPMorgan Chase Bank, N.A.*, No. 11-00329-8-RDD, 2011 WL 6140744, at *2 (Bankr. E.D.N.C. Dec. 9, 2011) ("[I]t is not mandatory that the court consider public records in deciding a motion to dismiss and the court may use its discretion in taking judicial notice of public records.").
   It is unclear whether any of the 2015 financial statements were filed with the United States Bankruptcy Court. In the end, it makes little difference for present purposes, as the Court concludes that these statements are insufficient grounds to deprive Plaintiff of discovery on his FLSA claim.
[7] However, the same statements show that the company's 2014 "cash receipts" totaled $470,025.54, a figure much closer to the $500,000 FLSA threshold. At this very early stage in these proceedings, without the benefit of expert testimony or interpretive guidance, the Court is not in a position to determine whether WPIP's reported "total income" for 2014 is the appropriate figure by which to ascertain the organization's enterprise liability.

Furthermore, even had the Court accepted Defendants' enterprise-coverage argument, the Court would still allow Plaintiff's FLSA claim to proceed on a theory of individual coverage. The individual avenue for FLSA liability is admittedly narrower than the enterprise avenue: as the Supreme Court recognized in *Mitchell v. Lublin*, 358 U.S. 207, 211 (1959), "Congress, by excluding from the [FLSA's] coverage employees whose activities merely 'affect commerce,' indicated its intent not to make the scope of the [FLSA] coextensive with its power to regulate commerce." Nonetheless, "within the tests of coverage fashioned by Congress, the [FLSA] has been construed liberally to apply to the furthest reaches consistent within congressional direction." *Id.* "[W]hether an employee is engaged 'in commerce' within the meaning of the [FLSA] is determined by practical considerations, not by technical conceptions." *Cook v. Nu-Tech Hous. Servs., Inc.*, 953 F.2d 1383, 1992 WL 17301, at *2 (4th Cir. 1992) (unpublished table decision) (quoting *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955)). "To determine whether an employee is 'engaged in commerce' . . . 'the test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity." *Bellows v. Darby Landscaping*, Civ. No. WDQ-15-885, 2016 WL 264914, at *4 (D. Md. Jan. 21, 2016) (internal quotation marks omitted) (quoting *Wirtz v. Modern Trashmoval, Inc.*, 323 F.2d 451, 457 (4th Cir. 1963)).

Plaintiff alleges that "[a]t all times relevant to [his] Complaint, [he] engaged in interstate commerce by the nature of his duties performed as part of [his] employment with Defendants." (ECF No. 1 ¶ 7.) He then describes his employment responsibilities, which included bill collecting, customer service, and security functions (*id.* ¶¶ 20-21)—all for an organization whose parking, storage, and rental services are directed to trucking operations (*i.e.*, the instrumentalities

7

of interstate commerce). While Plaintiff's Complaint could have been more artfully drafted, and while the particularities of his daily responsibilities are unclear at this point, the Court can plausibly infer that an office employee and security guard at a company that caters to truck drivers may have done work so related to the functioning of an instrumentality of commerce as to be, for practical purposes, a part of it, *see Modern Trashmoval*, 323 F.2d at 457.

In fact, courts have acknowledged that employees with clerical or other duties of an apparently intrastate character may nevertheless qualify in some circumstances as employees engaged in interstate commerce. *See Kendrick v. Eagle Int'l Grp., LLC*, No. 08-80909-CIV, 2011 WL 1326830, at *3 (S.D. Fla. Apr. 4, 2011) (marketing associate who used the telephone, postal service, and Internet to contact potential clients was engaged in commerce); *Shelton v. Inn at Trivium*, No. 6:08cv00040, 2009 WL 1255465, at *3 (W.D. Va. May 6, 2009) (bed-and-breakfast assistant manager whose responsibilities included running credit-card transactions and making interstate phone calls was engaged in commerce); *see also Wirtz v. Wardlaw*, 339 F.2d 785, 787 (4th Cir. 1964) (office employees who mailed newspaper clippings, monthly newsletters, and birthday cards to solicit out-of-state business were engaged in commerce); *Crook v. Bryant*, 265 F.2d 541, 542-43 (4th Cir. 1959) (night watchman who answered phone calls and removed small parts from vehicles retrieved from interstate highways was engaged in commerce); *cf.* 29 C.F.R. § 776.10(b) ("[S]ince 'commerce' as used in the Act includes . . .'communication' itself, employees whose work involves the continued use of the interstate mails, telegraph, telephone or similar instrumentalities for communication across State lines are covered by the Act.").[8]

---

[8] Defendants cite several cases to bolster their argument that Plaintiff is not entitled to individual coverage under the FLSA, but these cases are procedurally and factually distinguishable. In *Rains v. East Coast Towing & Storage, LLC*, 820 F. Supp. 2d 743, 748 (E.D. Va. 2011), the district court granted summary judgment to the defendant after finding that the plaintiff, a tow-truck driver, towed vehicles solely intrastate and conducted no other business for his employer. In *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1267 (11th Cir. 2006), the Eleventh Circuit affirmed the district court's grant of Rule 50 relief to the defendant, concluding that the plaintiff adduced insufficient evidence of correspondence or transactions with out-of-state vendors. And in *Wirtz v. Modern*

Of course, the burden rests on Plaintiff to prove each element of his FLSA claim, including the interstate-commerce element. But this is the pleading stage, and given Plaintiff's express allegation that he was engaged in commerce, it would be premature for the Court to presume that he cannot adduce sufficient evidence in support of that allegation. *Cf. Amato v. SNAP Telecomms., Inc.*, Civ. No. WDQ-12-02410, 2013 WL 4561906, at *2 (D. Md. Aug. 27, 2013) (finding that plaintiff-employees stated a claim for relief under the FLSA where they alleged, *inter alia*, that they "'were engaged in commerce or in the production of goods for commerce' within the meaning of the FLSA").

## IV. Conclusion

For the foregoing reasons, an Order shall enter DENYING Defendants' Motion to Dismiss (ECF No. 3).

DATED this 23rd day of February, 2016.

> BY THE COURT:
>
> /s/
> James K. Bredar
> United States District Judge

---

*Trashmoval, Inc.*, 323 F.2d 451, 457 (4th Cir. 1963), the Fourth Circuit reversed the district court's entry of judgment for the plaintiff–trash collectors; in so doing, the circuit court observed that the plaintiffs were "engaged, almost exclusively, in the removal of waste which lacks further utility" and that "[f]ar from feeding or supporting the interstate flow of commerce, these employees deposited the materials handled at an ultimate in-state destination." In each of these cases, the court reached its decision in light of an evidentiary record; in the instant case, by contrast, litigation has only just commenced, and discovery is not yet underway.

Defendants do cite one case in which the district court dismissed a FLSA claim outright. In *Russell v. Continental Restaurant, Inc.*, 430 F. Supp. 2d 521, 525-26 (D. Md. 2006), Judge Williams of this District held that a waitress at a local restaurant who (1) may have served out-of-state customers, (2) may have handled produce with out-of-state origins, and (3) conducted interstate communications on an irregular basis was not engaged in interstate commerce. Significantly, however, the motion under review in *Russell* was a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. As Judge Williams noted, "the plaintiff bears the burden of proving that subject matter jurisdiction exists in the federal courts." *Id.* at 523. However, as discussed in note 2, *supra*, courts have more recently recognized that "FLSA coverage is *not* a jurisdictional issue," *Ramirez*, 114 F. Supp. 3d at 309 n.2. Consequently, Plaintiff here need only sustain the comparatively light burden of stating a plausible claim for relief.